[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION TO OPEN JUDGMENT OF DISMISSAL
On May 11, 1998, the undersigned denied the plaintiff's Motion to Open Judgement of Dismissal dated April 3, 1996. The plaintiff thereupon moved for the argument. which the court granted, and oral argument was held on July 27, 1998. Having heard the arguments of counsel[1], the undersigned reaffirms his original order denying the motion to open the Judgement of dismissal.
A review of the file reveals that the plaintiff's complaint, dated November 27, 1992 and bearing a return date of January 19, 1993, alleges that the plaintiff was injured when his automobile was struck by a motor vehicle owned by the defendant, Yale University, and operated by the defendant Anthony DeLuise. Counsel appeared on behalf defendants on December 12, 1992 and filed an answer and special defense the same day. Thus, some five weeks before the return date, the filing of a reply to the special defense would have closed the pleadings.
The plaintiff, however did not take any action to close the pleadings. The next in the file is a June 3, 1993 Motion for Default filed by the defendant based on the plaintiff's alleged failure to answer the plaintiff's first and second requests for disclosure and production. A history of this case thereafter is one of dismissals to pursuant to the Judicial Branch's Dormancy Program and motions to open those judgments of dismissal.
The purpose of the Judicial Branch's Dormancy Program is to encourage litigants to pursue their cases vigorously and to clear the docket of cases which are no longer litigated by the parties with due diligence. The program also has the effect of eliminating CT Page 8972 dormant cases from the computer system, thereby increasing its ability to store information and files. The program also helps to alleviate some of the file storage deficits within the clerks' offices.
Practice Book § 1-23 provides the authority for the program, authorizing the court, on its own motion, to render judgment dismissing an action "for failure to prosecute reasonablediligence." The Practice Book indicates that at least two weeks' notice shall be required except in cases appearing on an assignment list for final adjudication.
Rather than putting the onus of implementation on individual courts, the Chief Administrator determines the timing and general parameters for a statewide dormancy program and sends a memorandum outlining the procedures to be followed administrative and presiding judges, chief clerks and caseflow coordinators. The program has generally been conducted twice each year, once in the spring and in the fall. Commencing in the calendar year 1999, the program will only be conducted in the fall.
The Chief Court Administrator establishes the criteria used to determine eligibility for placement of files on the dormancy calendar. As of this writing, the criteria are:
1. Writ only on file: six months from return date.
2. Writ and appearance only: six months from return date.
3. Pleadings not closed: twelve months from return date.
 4. Pleadings closed but the certificate of closed pleadings is not filed; twelve months from return date.
Additionally, all case with the C40 case type (Contract Collections) and the M83 case (Transfers from Small Claims to the Regular Docket) which have remained at the pleading stage for more than six months are included in the program.
 2. The rules of the program automatically exempt eminent domain and foreclosures in which a judgment of foreclosure by sale has been ordered the code for such a matter has been properly entered into the computer. In addition, the program exempts receivership cases under Chapter 664c General Statutes if a statement prescribed by General Statutes § 36a-231 is filed. Bankruptcy cases are also exempted if one of the parties has claim for exemption accompanied by an affidavit of bankruptcy as prescribed by Practice Book § 14-2, as are Lead Paint CT Page 8973 Litigation (LPL) cases that are so designated in accordance with procedures as published by the Judicial Branch.
Litigants whose cases fit within the categories described above may, nonetheless escape dormancy dismissal by:
 1. Filing a certificate of closed pleadings before the scheduled dismissal date indicated on the dormancy calendar;
2. Filing a withdrawal of action;
3. Proceeding to final judgment; or
 4. Obtaining an order granting an exemption for good cause prior dismissal date indicated on the dormancy calendar.
The Presiding Judge will designate the date and the courtroom for the call of those cases subject to dormancy dismissal. He or she will transmit this information to the Commission on Official Legal Publications (COLP) which will print individual court calendars and mail them to those who maintain an appearance in an affected case.
Only counsel requesting an exemption need appear at the calendar call. Since all of the cases are automatically continued to a dismissal date (usually about two months after the call) established by the Chief Court Administrator, counsel and pro se parties need not appear except to request complete exemption from dismissal. Such requests need not be in writing.
In addition to their right to make such a request at the call of the dormancy calendar, litigants may, at any time after that call, file a written motion for exemption which will be placed on short calendar for determination by the court. The filing of such a motion before the dismissal date is deemed to protect the case from dismissal, such that even though it is not calendared until after the dismissal formally enters, the motion, if granted, will have the effect of vacating the dismissal nunc pro tunc. In dealing with the motions for exemption, judges try to do their best to ensure that the fundamental purpose of the program are carried out without unfairly penalizing litigants for delays that may be beyond their control. As with any judgment of dismissal, a plaintiff may move to open a dormancy dismissal within four months after receiving notice of its having been rendered.
This case first appeared on a dormancy calendar in the fall of 1993. No motion for exemption having been filed, and the pleadings not having been closed, the case was dismissed on CT Page 8974 December 10, 1993. The plaintiff then filed a timely motion to open the judgment of dismissal, which was granted by Judge Licari on March 18, 1994.
The case appeared on the dormancy calendar in the fall of 1994 and once again the plaintiff neither took action to close the pleadings nor sought an exemption. The case was therefore dismissed for dormancy on December 9, 1994 but again reopened by Judge Licari pursuant to the plaintiffs motion on April 13, 1995. Although the plaintiff finally filed a reply to the defendant's special defense on August 18, 1995, he never certified the pleadings as having been closed. Because there was no certification of closed pleadings, and because the plaintiff again did not seek exemption after the dormancy calender was published, the case was dismissed for dormancy for a third time on December 8, 1995.
The plaintiff filed the present Motion to Open Judgment of Dismissal on April 4, 1996, but he never claimed it to the short calendar until nearly two years later. Although, as indicated, the undersigned initially denied the motion to open the judgment of dismissal on the papers, he agreed to permit reargument in order to permit plaintiff's counsel a full and fair opportunity to explain what to all appearances was an abject failure to prosecute, his client's case with reasonable diligence. His explanations, however, provided no justification for his having failed to file any motions for exemption from the dormancy program, for having failed to take the simple actions necessary to close the pleadings and to certify them as having been closed, and for having failed to pursue his third motion to open dormancy dismissal until more than two years after it had been filed.
As of this writing, there are some fourteen thousand civil cases pending in this courthouse, of which five thousand are in the inventory of cases awaiting assignment jury trial. Statewide, those numbers are seventy six thousand and twenty three thousand respectively. The dormancy program is designed to weed out those cases which are not being diligently prosecuted so that those cases which are being pursued with reasonable vigor can be adjudicated as promptly as possible. While there is occasionally a good excuse for allowing a case to go dormant once, there is rarely an excuse for allowing happen twice and almost never a reason to have a case dismissed for dormancy three times Moreover, in this case, the plaintiff never even sought an exemption from the dormancy program and, in the case of the third CT Page 8975 dismissal, he did not seek to have his motion to open resolved until more than two years after it had initially been filed. This court has seen few cases less diligently prosecuted than the present one.
It is always disturbing to have to enter an order which essentially punishes a litigant when it is the neglect of counsel that has brought about this result. Unless this court is in effect willing to declare that the dormancy program is utterly without meaning, however, it has no choice but to affirm its original order and deny the motion to open the judgment of dismissal.
The motion to open the judgment of dismissal is therefore denied.
Jonathan E. Silbert, Judge